IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 13-cv-02102-RBJ

LEHMAN BROTHERS HOLDING, INC.,

    Plaintiff,

v.

GATEWAY BUSINESS BANK, and
FIRST PACTRUST BANCORP, INC.,

    Defendants.

## ORDER

This matter is before the Court on the defendants' motion either to dismiss this case on statute of limitations or personal jurisdiction grounds or, alternatively, to transfer the case to the Central District of California. Because this Court concludes that the case should be resolved in the California court, the motion to transfer is granted.

## FACTS

This case arises out mortgage loans made by Gateway Business Bank (a California bank) to Steven Brooks (a California resident) and Gerardo Pena Ruiz (a California resident) in 2004. The loans were secured by property in Red Bluff, California and Orland, California, respectively. Gateway then sold the loans to Lehman Brothers Bank pursuant to agreements that, among other things, warranted that if any statements in the borrowers' loan applications turned out to be false, Gateway would repurchase the loans and hold Lehman Brothers Bank harmless.

Lehman Brothers Bank resold the loans to its parent company, Lehman Brothers Holdings, Inc. ("LBH"), a Delaware corporation with its principal place of business in New York.  LBH, the plaintiff in this case, resold the Brooks loan to Fannie Mae and the Ruiz loan to CitiMortgage.  Brooks and Ruiz eventually defaulted.  Upon determining that the loan applications on the two loans contained "defects," CitiMortgage required LBH to repurchase the Ruiz loan.  Fannie Mae similarly demanded and obtained compensation from LBH on the Brooks loan.  LBH now seeks to enforce the original agreements against Gateway Business Bank's successor by merger, First PacTrust Bancorp, Inc. (a California bank) and its holding company, Bank of California, Inc. (a Maryland corporation headquartered in California).

The only connection of these transactions to Colorado that I can find is that LBH has apparently authorized a subsidiary, "LAMCO, LLC," which is based in Denver, to enforce its rights and collect funds owed to it.  *See* letter from John Baker of LAMCO to Ron Tarbell of Gateway Business Bank, December 9, 2010 [Doc. #13–3].

## STANDARD OF REVIEW

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).  Section 1404(a) gives "discretion [to] the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness."  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (internal quotation marks and citation omitted).  The statute was drafted to revise the common law *forum non conveniens* doctrine to give courts "greater discretion to transfer a cause pursuant to § 1404(a) than to dismiss the action based upon *forum*

*non conveniens*." *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir. 1991) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253 (1981)).

The Tenth Circuit has held that the moving party bears the burden of proving that "(1) the action could have been brought in the alternate forum, (2) the current forum is inconvenient, and (3) the interests of justice are better served in the alternate forum." *Wolf v. Gerhard Interiors, Ltd.*, 399 F. Supp. 2d 1164, 1166 (D. Colo. 2005) (citing *Chrysler Credit*, 928 F.2d at 1515).

In determining whether a case should be transferred for convenience of the parties and in the interests of justice, the Court balances the factors outlined in *Chrysler Credit*. Those factors include, but are not limited to:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Chrysler Credit*, 928 F.2d at 1516 (citation omitted).

## ANALYSIS

### JURISDICTION AND VENUE IN CALIFORNIA

No one disputes that this action could have been brought in the Central District of California. The same facts that support diversity jurisdiction here are equally applicable there. Venue is proper in the Central District of California because it is the "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2).

**CHRYSLER CREDIT FACTORS**

A. Plaintiff's Choice of Forum.

The plaintiff's choice of forum is ordinarily given substantial weight. *See Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010). However, courts "accord little weight to a plaintiff's choice of forum where the facts giving rise to the lawsuit have no material relation or significant connection to the plaintiff's chosen forum." *Id.* at 1168 (internal quotation marks and citation omitted).

A number of judges in this district, myself included, have drawn cases similar to the present case. These cases involve underlying loans made by lenders in states other than Colorado which were sold to the Lehman Brothers Bank back in the early to mid-2000's pursuant to the same or similar contracts as are involved here, and where, following the borrower's default, an entity related to Lehman Brothers is now trying to enforce those agreements against the original lender. In reported cases where the issue of transfer to a different district has been discussed, the results have been mixed. *Compare Aurora Bank, FSB v. Paramount Residential Mortgage Group, Inc.*, No. 12CV3235-REB-BNB, 2013 WL 4079428 (D. Colo. Aug. 13, 2013) (declining to transfer the case to the Central District of California) *with Aurora Bank FSB v. Home Loan Center, Inc.*, No. 12CV2888-CMA-MJW, 2013 WL 2014182 (D.Colo. May 14, 2013) (transferring the case to the Central District of California). In those two cases the courts recognized the importance of honoring a plaintiff's choice of forum but gave that factor different weight. *Compare Paramount*, 2013 WL 4079428 at *3–4 *with Home Loan Center*, 2013 WL 2014182, at *2.

But at least in those cases the plaintiff that selected the Colorado forum was a federal savings bank with its principal place of business in Littleton, Colorado. Here, there is no connection to Colorado other than the fact that LBH has authorized what amounts to its internal collection agency, located in Colorado, to pursue the claim. The plaintiff here is a Delaware corporation with its principal place of business in New York. I am not persuaded that LBH's choice of forum is entitled to compelling or even substantial weight on the present facts.

B. Accessibility of Witnesses and Sources of Proof.

*Accessibility of Witnesses*

"The convenience of witnesses is the most important factor in deciding a motion under § 1404(a)." *Bartile Roofs*, 618 F.3d at 1169 (citations omitted). "To demonstrate inconvenience, the movant must (1) identify the witnesses and their locations; (2) indicate the quality or materiality of their testimony; and (3) show that any such witnesses were unwilling to come to trial, that deposition testimony would be unsatisfactory, or that the use of compulsory process would be necessary." *Id.* (internal quotation marks, alterations, and citations omitted).

Defendants state that there are a number of material non-party witnesses located in California that cannot be compelled to appear in Colorado. [Doc. #13 at 14]. They suggest that testimony from the individual borrowers, presumably California residents, will be indispensable because LBH's basis for its claim is that those individuals misrepresented their income, resulting in the breach on which LBH is suing. *Id.* Defendants also suggest that two former employees of PacTrust and GBB – the former President of GBB/PacTrust's lending division, Len Israel, who worked with Lehman Brothers Bank regarding the loans at issue, and Ron Tarbell, former officer and director of GBB, who was the recipient of a demand letter seeking payment for the alleged

breaches – would be material witnesses, and they reside in Southern California. [Doc. #13-1 at ¶¶ 9–10]. None of these individuals can be compelled to testify in Colorado.

In *Paramount Residential Mortgage* Magistrate Judge Boland described the defendant's concern about accessibility of witnesses as the defendant's strongest argument. 2013 WL 4079428 at *4. Even so, he found that the argument favored transfer "only slightly," in part because transfer is not justified where the result is simply "shifting the inconvenience from one side to the other," and in part because the defendant had not by affidavit set out the substance of their testimony. *Id.* (citing *Scheidt v. Klein*, 956 F.2d 963, 966 (10th Cir. 1992)).

Here, Defendants make some attempt to explain why the testimony of California-based witnesses will be necessary. They suggest that the borrowers will have to testify because they are alleged to have misrepresented facts on their loan applications. I can see how that might be possible, although I also recognize that their testimony could be taken by deposition. As for the former bank officers, Mr. Israel, per the Tilton affidavit, is "the individual with whom Lehman Brothers' representatives worked with regarding the referenced loans." [Doc. #13-1 at ¶ 9]. But the terms of the contracts will speak for themselves unless there is an ambiguity that opens the door to extrinsic evidence. I presume as well that Mr. Israel's testimony could be taken by deposition. The case for Mr. Tarbell is slim – he is the addressee of the LAMCO demand letter, but so what? Even if the demand letter goes to notice for purposes of the defendants' statute of limitations argument, the date on the letter speaks for itself.

I bear in mind that this is a dispute between commercial entities about who bears the loss sustained on two relatively ordinary residential mortgage loans. Statistically, at least, it is more likely than not that it will be resolved on a business basis before trial. But assuming that the case

6

might go to trial, or at least through some depositions, the accessibility-to-witnesses factor tilts in favor of transfer. Like Magistrate Judge Boland, however, I would say that the tilt is slight.

*Sources of Proof*

LBH claims that the majority of the case's key evidence is located in Colorado. However, the loan files are the only evidence that LBH has indicated as being in Colorado. [Doc. #19 at 20]. The replication of these files in California would create a de minimis expense and inconvenience. If anything, the plaintiff will already be required to produce these documents for the defendants during discovery.

In addition, the defendants argue that "the most important sources of proof will be the files and documents regarding the underwriting of the Loans. The vast majority, if not all, of this key evidence is located in the Central District of California." [Doc. #13 at 15]; *see also* [Doc. #13-1 at ¶¶ 4–7]. The Court agrees. This suit concerns allegedly noncompliant underwriting on loans underwritten by a California bank made to California borrowers to secure properties in California. Most, if not all, of the key evidence will be located in California. This factor weighs in favor of transfer.

C. <u>Cost of Making Necessary Proof</u>.

LBH argues that "the cost to Plaintiff of litigating its case in California is considerably more substantial than the cost to Defendants of litigating in Colorado." [Doc. #19 at 20]. "Simply put, everything is more expensive in California. The cost of court reporters, hotel rooms, food, and transportation is more expensive in California." *Id.* Maybe. But even if this is true, a slight uptick in costs would not justify keeping a case like this in Colorado. Realistically, the costs of litigating this case will turn primarily on what the lawyers charge and whether the

parties try to resolve the dispute without extensive litigation battles. Those factors are not necessarily venue driven.

D. Congested Dockets

Of the remaining *Chrysler Credit* factors, LBH only highlights "congested dockets." LBH indicates that 17,464 cases were filed in the Central District of California in 2011 versus 4,170 cases in Colorado. It does not mention, however, that the Central District has five times as many active district judges as the District of Colorado. Either court can, and I assume will, handle this case with reasonable dispatch.

## CONCLUSION

I am not a believer in palming off a case on another district that I can just as easily handle here. And I agree with LBH that the defendants' concerns about the difficulty and expense of defending the case in Colorado have been exaggerated. What bothers me the most about this particular case is that the choice of a Colorado forum is essentially arbitrary, being unrelated to the parties or the transactions and determined only by the location of the collection entity. Given the lack of connection to Colorado, the slight balance of convenience to witnesses, and that the sources of proof are likely to be found in California, I conclude that this case should be resolved in the Central District of California in the interest of justice.

## ORDER

1. Defendants' motion [Doc. #13] is GRANTED IN PART, i.e., to the extent that it seeks a transfer. The Court orders that the Clerk transfer this case to the Central District of California pursuant to 28 U.S.C. § 1404(a). To the extent the motion seeks dismissal under Fed. R. Civ. P. 12(b)(6) based on the statute of limitations, this Court does not reach or decide the issue. To the

extent the Bank of California seeks dismissal for lack of personal jurisdiction, the motion is moot.

2. Pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1, Defendants are awarded their reasonable costs.

DATED this 31st day of March, 2014.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge